**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF STANWICH MORTGAGE LOAN TRUST K<br><br>    PLAINTIFF<br><br>v.<br><br>WILLIAM N. COCHRAN<br><br>    DEFENDANT(S) | CIVIL ACTION NO:<br>1:23-cv-00133-NT |

**REPLY TO DEFENDANT'S OPPOSITION TO MOTION TO ENFORCE SETTLEMENT AND ALTERNATIVELY TO DISMISS CASE WITHOUT PREJUDICE, and REQUEST FOR HEARING**

Before this Court is a Motion to Enforce a Settlement Agreement, and alternatively a Motion to Allow the Pre-trial Dismissal of this foreclosure action *without prejudice.*

It is axiomatic that the latter request, under Fed R. Civ. P. 41(a)(2) vests the Court with discretion to set equitable terms for a dismissal without prejudice it considers proper.

### I. SUMMARY OF PLAINTIFF'S REPLY

Although happening frequently enough to generate precedent, motions to enforce settlements are fairly rare. When they do occur, the usual arguments on either side typically involve a nuanced, academic argument centering around three basic areas of law:

1

1)  Contracts – Was there an agreement?

2)  Agency – If there was an agreement between counsel, did counsel overstep the actual authority to make that agreement or did the party agree (then change their mind)?  Does it matter?

3)  Privilege – The question of whether agreeing counsel had the actual authority to bind the party requires examination of who said what, to whom, and when.  Because the crucial communications involve attorney and client, more nuanced discussions of *privilege, waiver*, and *limited admissibility* ensue.  During this examination, lessons are learned (or re-learned) regarding when communications (even those that seem subject to privilege) are actually *operative facts*;  both admissible, and determinative.

**THAT** is what this motion should have been about.  The Plaintiff's reply could then have been succinct and focused:

1)  An agreement ending the foreclosure case (the goal expressed by of d*efense counsel* as early as his March 21st e-mail) was reached with the consent of both parties and counsel.  This agreement included:

a)  a mortgage modification specific as to each and every term;

b)  an agreement for the swift and direct reimbursement of all then-accrued Defendant's attorney's fees using an exact amount **supplied by Defendant's counsel** who had already furnished a **W-9**; and

c)  a settlement agreement reserving rights in Defendant's separate case the last revisions to which were drafted by *Defense counsel himself.*

In its opposition, Defendant dodged and ignored the question of whether there was a valid agreement. Instead, Defendant decided that *ad hominem* vitriol directed at the undersigned with accusations of deceitful conduct[1] were called for, supported only by repetitive arguments about the *other case.*[2]

Once the fog is burned away by a dispassionate examination of what really occurred, and evidence, Plaintiff believes this Court's path to the correct decision on these issues will become clear. The settlement agreement should be enforced, OR, alternatively, this case should be dismissed *without prejudice* on terms and conditions similar to those agreed to (save an equitable adjustment because of Defendant's choice to dispute the agreement as he did).

This Reply also include the within **Request for an Evidentiary Hearing, and Oral Argument**, so that the truth about whether Defense Counsel had authority to enter an agreement, and **his** contribution to the proofreading of the settlement agreement can be considered by the Court.

---

[1] Page 1:   a)   "undisclosed terms"
Page 2:   a)   "Plaintiff's lawyer slipped into the 'agreement'"

   b)   "But that is a false statement of the terms of the settlement agreement"

   c)   "Instead, Carrington's counsel; slipped into the settlement agreement. . . ."

Page 3:   a)   Plaintiff, represented by the same attorney as Carrington, slipped that term in buy defining 'Lawsuit' to deny Mr. Cochran his statutory right to fees . . ."

[2] All said allegations (even in their adjectivally enhanced and repeated states) have been denied, and none are pertinent to this motion. The Defendant in the other case (not a party to this case) eagerly awaits the opportunity to defend.

**ALL ELEMENTS OF THE SETTLEMENT WERE AGREED TO**

Defendant's opposition addresses *none* of the material and relevant allegations in the Motion.

The following terms of the settlement remain unchallenged, each of which is supported by actual evidence as follows:

1) **The Modification**

The mortgage modification attached to the Motion to Enforce was agreed to, containing all the terms requested by the borrower and agreed to by Plaintiff.  This is consistent with agreement on the material terms discussed since May 4th.  Please See Exhibit 5, Page 8 (ECF 40-5).

Exhibit 6, Page 9 of the Motion (ECF 40-6) is an e-mail attaching the last rough draft of the settlement agreement.  Noteworthy is the *title* of the document (CLEAN Draft Release Reservation and Settlement Agreement 5-27-24.**jzs**.docx), which shows that *defense counsel* made the final revisions (except for the insertion of the escrow amount, and the final attorney's fees amount).

The final paragraph of the e-mail refers to the modification.  The "incorporation clause" that caused Defense counsel discomfort was, indeed, removed. (See Supplemental Declaration of William Fogel filed herewith).  In fact, the copy of the Modification **defense counsel** constructed eliminating that clause was the original modification agreement tendered for signature and recordation. (ECF 40-1).

4

**2)      The Attorney's Fees**

The final attorney's fees amount inserted into the Settlement Agreement at Page 3 was $**8515.00** (ECF 40-2).  Exhibit 6, pages 10 and 11 offer context showing where that $8515.00 figure came from *defense counsel.*

An original figure of $7800.00 included in the *early draft* Modification Agreements had also been proposed by *defense counsel.*  Once Exhibit 6 Page 9 was sent, pages 10 and 11 were exchanged (ECF 40-6).  There had been a slight misunderstanding (as referred to in the e-mail) resulting in the quotation of $10,355 as foreclosure fees.  *Defense counsel* supplied the $8515.00 as the actual then current figure after the misunderstanding was resolved.[3]  His figure was agreed to and inserted into the final tendered draft settlement agreement.

Also noteworthy is Exhibit 6, Page 8 (ECF 40-6) in which the undersigned wrote:

Just to be clear, my intent was to wipe the slate clean regarding the foreclosure and get your *defense* fees paid.

Unfortunately, Defendant's opposition is *silent* regarding his having proposed and then accepting the $8515.00 figure and the language within the "fees" paragraph.  The Supplemental Declaration addresses the potential confusion.

---

[3] The "crossed wires" referred to in Exhibit 6 concerned a personal appearance made by defense counsel at the final mediation, after it was already established that Plaintiff planned to *dismiss* the foreclosure, having verified that the § 6111 notice, in fact contained an error.  The parties agreed to excise the fees attributed to that appearance.

3) **The Settlement Agreement**

While the Settlement Agreement **Document** can, in some cases, be helpful, it is not determinative, as Defense Counsel appears to argue. Remaining uncontroverted is the precedent cited in *support* of Motion to Enforce written by Judge Singal in *Concordia Partners, LLC v. Ward No. 2:12-CV-138-GZS, 2014 WL 3378663 (D. Me. July 9, 2014)*:

> "The law does not require that an agreement be signed in order for contracting parties to be bound." *N. Maine Transp., LLC v. OneBeacon Am. Ins. Co.,* 820 F.Supp.2d 139, 145 (D.Me.2011); *see also Fid. & Guar. Ins. Co. v. Star Equip. Corp.,* 541 F.3d 1, 6 (1st Cir.2008) (fact that agreement contemplated "execution of a more formal agreement" did not preclude enforcement of hand-written agreement). However, "[i]n order to be binding, a settlement agreement requires the mutual intent of the parties to be bound by terms **sufficiently definite to enforce**." *Muther v. Broad Cove Shore Ass'n,* 968 A.2d 539, 541 (Me.2009) (citing *Forrest Assocs. v. Passamaquoddy Tribe,* 760 A .2d 1041, 1044 (Me.2000)).
>
> (emphasis added)

As pointed out in the Motion to enforce, each and all material elements of the agreement were completed, save the signatures.  As we now find out, the only arguable quibble was in the reservation agreement, which did not indicate a failure to establish a contract.  Further, even the issue over the reservation had nothing to do with the foreclosure (or the settlement.

Because Defendant offers nothing admissible, and no contrary evidence contradicting a complete agreement as to the disposition of the foreclosure, the Motion should be granted.

A.      Before Defendant's Repudiation:

The sole basis for Defendant's repudiation of the settlement concerns what appears to be *both counsel* having missed a mistaken word in the formal resolution and settlement agreement memorializing the deal (**not the modification**).  The inconsistency between the stated and shared intent that all Mr. Cochran's rights and remedies be reserved, and what looks like the inadvertent substitution of "lawsuit" for "foreclosure" in Paragraph 11 of the formal reservation and settlement agreement.  This basis appears consistent with a pretext unrelated to the settlement of the foreclosure.

The context of the rest of the communication between the parties supports Plaintiff's Motion.  The foreclosure was settled.

Page 1 of the agreement (ECF 40-2)[4] states:

> WHEREAS, The Parties are desirous of a resolution of the Foreclosure while **reserving all rights and remedies** arising out of the allegations contained within the Lawsuit, **which will remain pending**;
> tendered for signature contains the agreed-upon unequivocal reservation of all rights in the Cochran v. Carrington matter.

Noteworthy is the text below, from Exhibit 6, page 8 (ECF 40-6):

> John:
>
> I appreciate that you are busy.  Just take another look.  I really do not see any waivers of *anything* within the text of the tendered agreement, or of the previously tendered modification **but I'm happy to review it with you and tweak what we need to**.
>
>                                             (Emphasis added)

---

[4] Copied from the document:  CLEAN Draft Release Reservation and Settlement Agreement 5-27-24.**jzs**.docx.

Again, the final "rough" draft of the settlement agreement, with its final substantive revisions[5] was produced by *Defense Counsel.*

Although Paragraph 11 of the Settlement Agreement does contain a reference to the "Lawsuit" rather than the more accurate term "Foreclosure"; it is obviously a shared scrivening error which evaded proofreading and review by **both** counsel. It was not material having no effect on the specific reservation of **all Mr. Cochran's rights** in the separate lawsuit he brought. A review of the entire admissible record, and all contextual documents supports the conclusion that there was an agreement.

B.   After Defendant's Repudiation

The evening repudiation of the Settlement Agreement (beginning with the phrase, "[u]pon further review" is before the Court, as Exhibit 3 page 1 (ECF 40-3). Although the initial (and unanswered) phone sourced "What Terms?" is part of Exhibit 3 (at page 2), the *follow up* e-mail quoted at page 7 of the Motion (ECF 40) by Defendant's opposition at page 3 (ECF 42) appears not to have been correctly appended to Exhibit 3 of the Motion (ECF 40). It is repeated, in pertinent part below, and attached to the Supplemental Declaration of William Fogel as Exhibit 1:

> John:
>
> This is a restatement of by phone sourced e-mail from earlier today, that was sent upon receipt of your e-mail beginning, "upon further review".

---

[5] The only difference between the 5-27-24 "jzs" revision, and the final document were the insertion of the updated escrow advances amount (undisputed), and the fee figure Defense Counsel supplied.

8

> It is very important that you tell me exactly what you contend is "inconsistent with our conversations" in the documents I forwarded to you.
>
> I strongly urge you to do so on an immediate basis, given that I have made representations to the Court, and to others regarding the status of both cases.
>
> I look forward to hearing from you, even as I re-check, for the third time, where the documents I sent could have run afoul of *any* of our discussions.

The above quoted e-mail was *never answered.* Defendant maintained "radio silence"; never disclosing what the problem was until the Opposition was filed **47 days later**, on July 15th.

      C)      Further Post-Repudiation Context – The Rule 68 Offer

The refusal of Defendant to communicate is important, because, as stated in the accompanying Supplemental Declaration filed herewith, nobody on the Plaintiff's side had **any idea** as to why Defendant repudiated the deal they wanted and agreed to.

A related document also demonstrates Plaintiff's unwavering intent that Mr. Cochran reserve *all of his rights and remedies* in his separate lawsuit, **including his rights to attorney's fees.**

On June 28th, still completely in the dark about the basis for Defendant's repudiation of the foreclosure settlement, a Rule 68 Offer of Judgment was tendered by Carrington to William Cochran, in his suit against Carrington. As verified by the partial excerpt of that Rule 68 Offer attached to the Supplemental Declaration filed herewith, it included the following conclusion:

9

. . .d) For Plaintiff's reasonable attorney's fees incurred *in the above captioned action* up to the date of this offer as may be determined by the Court.
(Italics and emphasis in original)

Respectfully, had there been intent on Plaintiff's part to *deprive* Cochran of any rights in his own suit (including attorney's fees), why would the payment of Mr. Cochran's attorney's fees in the Cochran v. Carrington case be offered?

The answer is that it was **always** the specific intent of **both** parties that Cochran be free to assert any and all rights in his consumer rights case, despite the settlement of the foreclosure case.

### 4. Argument and Conclusion

The case law cited in the Motion is binding, controlling, and unchallenged. Although it certainly remains a widely held rule that an attorney's apparent authority during litigation *is sufficient* to bind a client, the First Circuit presently remains unpersuaded.

Therefore, what was and was not agreed to by Mr. Cochran *is* relevant, although his counsel certainly made a deal on his behalf. Did he change his mind?

Because of Defense counsel's choice to evade, rather than address, that question remains unaddressed. The record supports a finding against Mr. Cochran, given the state of the documents, and the admissible evidence.

As stated in the beginning, these issues can put inexperienced counsel in a tough spot.

a) If counsel *exceeded* authority, admitting that fact is awkward impacting the above referenced privilege issues;

10

b) If counsel *has* acted with actual authority, admitting that fact can prove even more awkward, impacting privilege issues *and* potentially putting counsel in a conflict position with a client who may have changed their mind, but is reluctant to admit it.

Defendant had already authorized Plaintiff's counsel to inform the Court about the settlement. The amount of the fees and the outstanding escrow were already trued-up. The W-9 was already proffered. Given the context of this case, why wouldn't Defense Counsel merely answer the question asking what the problem was with the documents? Obviously, the record proves that the offending term would have been switched instantly, clearing the way for the implementation of the settlement.

Respectfully, pointing an accusatory finger at opposing counsel is rarely an answer, often only obfuscating a truth regarded as inconvenient.

The admissible record compels the Court to enforce the settlement agreement which gives Plaintiff exactly what he claimed he was entitled to, pays all of his defense fees, and leaves him free to litigate his grievances to his heart's content.

DATED: July 28, 2024

                                                  */s/William A. Fogel*
William A. Fogel
Attorney for Wilmington Savings
Fund Society, FSB as Trustee of
Stanwich Mortgage Loan Trust K

Brock & Scott PLLC
30 Danforth Street, Suite 104
Portland, ME 04104
(860) 474- 8747
bill.fogel@brockandscott.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the pleading to which this Certificate of Service is attached was filed electronically via this court's ECF system, and thereby was served electronically upon all parties who have appeared in this case.

DATED:     July 28, 2024

<u>/s/ William A. Fogel</u>
William A. Fogel